## HARRISON H. LAMOTTE *vs.* JOHN WISNER.

*Landlord's Lien under a Distress for Rent—Rights of a Bona Fide Purchaser without Notice, of Property taken under a Distress—Pleading and Practice in an action of Replevin.*

Cattle taken under a distress for rent, were left in the tenant's possession unsold at his request, and upon his agreement to pay the rent on or before a day named, and as between him and the landlord, it remained subject to the lien acquired under the distress. If, however, the landlord permitted the cattle to remain in the possession of the tenant for an unreasonable length of time, without making a sale under the distress, and the cattle were then driven by the tenant from the farm occupied by him to the farm of W., and were there purchased by him without notice of the distress, the landlord's lien cannot be enforced to the prejudice of the rights of W. as a *bona fide* purchaser. On the other hand, if the cattle were not sold to W., but merely left in his possession by the tenant, they still remain subject to the lien acquired by the landlord under the distress.

Replevin may be maintained in this State, not only for the unlawful taking, but also for the unlawful detention of property.

It is not necessary in replevin, that the plaintiff should prove an absolute title to the property. As against a trespasser or wrong-doer, the right of possession is sufficient. If W., the plaintiff in replevin, agreed to give a certain stipulated sum, and the tenant agreed to take it, or if the latter agreed to sell the cattle to the former in consideration of an existing indebtedness, the cattle being in the possession of W., the title passed, and no other delivery was necessary. On the other hand, if W. only made a conditional offer which was not in fact accepted, then of course the sale was incomplete, and the transaction did not amount to a valid bargain and sale of the cattle.

If W. had notice of the landlord's distress, or assisted the tenant in removing the property from the farm occupied by him for the purpose of preventing the landlord from executing his distress, then he was not entitled to recover. As against the landlord, he had neither title or the right of possession.

The fact that W. assented, or assisted in driving the cattle from his premises when removed at the instance of the landlord, under a mistake in regard to his rights, would not prevent him from afterwards asserting his claim to the cattle.

The fact that other persons appraised the cattle at $249, for which W. paid $300, did not lead in any manner to prove that the sale was fraudulent.

In an action of replevin in this State, the plaintiff must show, that he is entitled to the right of possession. The defendant may plead *non cepit*, property in himself or in a stranger, inconsistent though these pleas may seem. The plaintiff's replication to these pleas must set up property in himself, and on this the issue is joined. And where the defendant pleads property in a third person, the burden of proof is upon the plaintiff to show a superior title to that third person. Under these pleas of property, the defendant if he succeeds, is entitled to a return of the property without making avowry or cognizance, because they destroy the plaintiff's title.

APPEAL from the Circuit Court for Carroll County.

The case is stated in the opinion of the Court.

*Exceptions.*—At the trial the plaintiff offered eleven prayers, all of which were omitted from the record by consent except the following:

7. That the defendant has offered no legally sufficient evidence to maintain the issues joined on his second and third pleas, and that the verdict of the jury must be for the plaintiff on the defendant's said second and third pleas.

11. If the jury find from the evidence, that the said Benjamin Worthington, on or about the 8th day of May, 1877, put the cows, in the declaration mentioned, in the possession of the plaintiff, or that on or about the 11th day of May, 1877, the plaintiff purchased said cows from said Worthington, and that some of the calves in the declaration mentioned, were born whilst said cows were in his possession, and that the others were born whilst in the possession of the defendant, and that said cows and

the calves born from them whilst in the possession of the plaintiff, were taken from his possession by Benjamin I. Worthington, and others mentioned by the witness, and put into the possession of the defendant, and were retained by him, and that whilst they were in defendant's possession, and before this suit the plaintiff demanded possession of said cows and calves, in the declaration mentioned, and the defendant refused him the possession thereof, and shall further find that the defendant was not the owner of said cattle, the plaintiff is entitled to recover.

The defendant offered the following prayers:

1. That if the jury find from all the evidence, that the defendant on the 28th May, 1877, at the time when the cows and calves in the declaration mentioned were delivered at his premises, was a keeper of a hotel or inn in Hampstead, Carroll County, and that said cattle were driven by other persons from the premises of the plaintiff, a mile distant from said inn, if the jury so find, to the said hotel or inn of defendant, and were driven and put by said persons in the yard of said hotel or inn and left there, and that said hotel or inn was the nearest inn to said plaintiff's premises, and the most convenient place for safe-keeping said cattle, and that said cattle were put in the said yard of said inn for safe-keeping, and that defendant was not in any manner connected with driving or taking said cattle from plaintiff's premises or possession, and did no act in connection with said cattle being placed in his said yard of said inn, other than to aid in turning them into said yard from the public road, at a distance of a mile from said plaintiff's premises, if the jury so find, then the verdict must be for the defendant, under the first plea in this cause.

2. If the jury find from all the evidence, the facts set forth in the preceding first prayer, and further find that the cows and calves in question in this case, were taken or seized on the plaintiff's premises by a constable of Carroll

County, under a claim of authority to do so, in virtue of a warrant issued by a justice of the peace of the State of Maryland, in and for said county, on the said 28th day of May, 1877, if the jury so find ; and shall further find that the cows and calves were driven and taken from the plaintiff's premises and possession on said occasion, by the persons in the first prayer mentioned and referred to, in conjunction with, and in aid of, and by direction of said constable, and under the authority of said constable, if the jury so find ; and further, that said constable was, and went with said persons and said cattle, driving the same from the said plaintiff's premises to Hampstead, and that said cows and calves were driven to and placed in the yard of defendant's inn by said constable, and by his direction for safe-keeping, under a claim by said constable of authority therefor, under a warrant of a justice of the peace, and that said cattle were left in said inn yard by said constable, under said claim of lawful authority, if the jury so find ; and further, that defendant had nothing to do, and did nothing in connection with the acts and doings aforesaid, if the jury find the same, except to receive and take care of said cattle in his said inn yard, by direction of said constable, if the jury so find, the verdict of the jury must be for defendant under the first plea.

3. That if the jury find from all the evidence in the case, that the plaintiff did not, on or about the 11th day day of May, 1877, *bona fide* purchase the cows in question from Benjamin Worthington, as and for the plaintiff's own property, the verdict of the jury must be for the defendant.

4. That before the jury can find a *bona fide* purchase of said cows, as mentioned in aforegoing third prayer, the jury must find from the evidence that on or about said 11th day of May, and on the occasion when said alleged purchase was made, the plaintiff paid to said Benjamin Worthington some portion of the purchase money agreed

on, or that said Worthington on that occasion made a delivery of said cows to the plaintiff.

5. If the jury find from all the evidence, that said cows were driven to and placed on plaintiff's premises by Benjamin Worthington, on or about 8th May, 1877, and that they remained thereon as the property of said Benjamin Worthington, if the jury so find, until on or about the 11th day of said May; and that on or about said 11th day of said May, it was agreed by and between the plaintiff and the said Benjamin Worthington, that said Worthington then sold the said cows to the plaintiff at and for the sum of $300, and that plaintiff agreed to purchase the same at said price, if the jury so find; and shall further find that on said occasion the plaintiff did not pay to said Benjamin Worthington, anything on account of said purchase money, and said Worthington did not then make any delivery of said cattle to the plaintiff, then there was no valid bargain and sale of said cattle to the plaintiff on that occasion.

6. If the jury find from all the evidence, that on or about the 11th day of May, 1877, it was agreed by and between the plaintiff and Benjamin Worthington, that the plaintiff would give the said Worthington $300 for the cows in question, but that if said Worthington could get more for them, he should or could do so, and sell them to anybody who would give him more, then the said transaction did not amount to a valid bargain and sale of said cows.

7. If the jury find from all the evidence, that on the 11th May, 1877, said Benjamin Worthington was indebted to the plaintiff in the sum of over $60, or between $60 and $70, on account of a judgment against said Worthington, and superseded by said plaintiff, and paid by plaintiff as superseder, if the jury so find, and also in the sum of $100 cash loaned, for which said Worthington had given plaintiff two promissory notes for $50 each, with said

Worthington's wife as security, and also an open account for the sum of $13 or thereabouts; and if they further find that on said day it was agreed, by and between said Worthington and the plaintiff, that the plaintiff should keep said cows as collateral security for the said moneys so due from said Worthington, then said transaction was not a valid bargain and sale of said cows to the plaintiff.

8. If the jury find from all the evidence. that on the 11th day of May, 1877, the said Worthington, in the last preceding prayer mentioned, was indebted to the plaintiff as in said prayer set forth; and shall further find that on said day it was agreed by and between said Worthington and the plaintiff, that the plaintiff should purchase said cows at and for the sum of $300, and that said debts so due to plaintiff, should go and be taken as part of said purchase money, and that the plaintiff should pay to said Worthington the balance of said purchase money whenever he could make the same; and shall further find that on said occasion the plaintiff did not deliver up to said Worthington either of said notes, or said judgment, or said open account, or any receipt or other evidence of payment, or satisfaction of the same, or any part thereof; and shall further find that plaintiff did not pay to said Worthington anything on account of said purchase money; and if they shall further find that said cows were then on plaintiff's farm and premises, and had so been for two or three days, and that said Worthington did not make any delivery of said cows to the plaintiff, then said transaction did not amount to a bargain and sale of said cows to the plaintiff.

9. If the jury shall find from all the evidence that the said Benjamin Worthington, on the afternoon of Sunday, the 6th day of May, 1877, removed said cows from the farm belonging to Benjamin I. Worthington, in Baltimore County, and then occupied by said Benjamin Worthington, as tenant, if the jury so find, for the purpose of pre-

venting the said Benjamin I. Worthington, either from levying a distress on the same, for rent due to said Benjamin I. Worthington, if the jury so find, or from selling the same under a distress for rent due before that time levied and made, if the jury so find, and brought said cows to Carroll County, and on the 8th day of said May, took the same to the premises of plaintiff for the purpose aforesaid; and if the jury shall find that the plaintiff combined with said Benjamin Worthington for the purpose aforesaid; and pretended to purchase said cows in pursuance of said purpose, and did not actually *bona fide* purchase said cows, if the jury so find, then the said transaction was a fraud, and the plaintiff cannot recover in this cause.

10. If the jury believe from all the evidence that the bargain and sale of said cows, by said Benjamin Worthington to the plaintiff, on the 11th day of May, 1877, as testified to by the plaintiff and said Benjamin Worthington as witnesses, was fraudulent, the plaintiff cannot recover in this cause, and the verdict must be for defendant.

11. If the jury find from the evidence that the cows in question were removed from the farm and premises of the plaintiff, on or about the 28th day of May, 1877, and that he aided and assisted in the same, the jury may find that he assented to said removal; and if the jury so find, the plaintiff cannot recover in this action.

12. That the plaintiff having given in evidence, a purchase by him of said cows and a title to the absolute ownership thereof in consequence of said purchase, cannot recover in this case, unless the jury believe from all the evidence that the plaintiff acquired a *bona fide* ownership thereof by means of the purchase alleged by him in evidence, and cannot recover on any supposed title as bailee; and unless the jury believe that the plaintiff acquired by purchase, a *bona fide* absolute title to said cows, on the 11th day of May, 1877, as testified to by plaintiff

and said Benjamin Worthington, as witnesses, the verdict must be for the defendant.

13. If the jury believe from all the evidence, that said Benjamin Worthington rented or leased from Benjamin I. Worthington, a farm in Baltimore County for a term of years, and went into possession thereof, under said lease, on or about the 1st day of March, 1876, and that the rent to be paid from 1st March, 1876, to 1st March, 1877, was $400, and that the same was payable quarterly; and shall find that on the 1st day of December, 1876, three-quarters' rent was due and unpaid, and that the sum of $5 on account thereof, was paid during December, 1876, and that the said Benjamin I. Worthington caused to be levied on the cows in question in this case, a distress for said rent due, on or about 26th January, 1877, and that George W. Stocksdale was the bailiff of said Benjamin I. Worthington, in levying said distress, and that said Stocksdale as such bailiff, levied said distress for rent, on said last mentioned day on said cows; and shall further find, that at the special instance and request of said Benjamin Worthington, the said Benjamin I. Worthington thereupon agreed that he would not sell said cows under said distraint forthwith or at the time when he might by law do so, and would not then cause them to be removed from the said farm then occupied by said Benjamin Worthington and his family, if the jury so find, but would permit the same to be left on said premises, on the assurance of said Benjamin Worthington that the said cows should not be removed from said premises, and that he, said Benjamin Worthington, would pay said rent due, on or before 1st May ensuing, and that if he failed so to do, the said cows would then be on said premises, and could be sold by said Benjamin I. Worthington, or by his said bailiff, for more money than they would bring at the said time of said distress, for the reason that they would be in better condition, and would probably have calves, if the jury find all said

Lamotte *vs.* Wisner.

facts; and if the jury find, that influenced by said promises and representations, the said Benjamin I. Worthington instructed his said bailiff not to remove said cows at said time, but to allow them to remain on said premises, and to forbear the sale of said cows under said distraint, until the said Benjamin Worthington might have an opportunity to pay said rent according to his said promises, if the jury so find; and if the jury find that the said bailiff did accordingly forbear to remove or sell said cows, and left the same on said premises so distrained on, if the jury so find; and if the jury further find, that the said Benjamin I. Worthington did not, and that said bailiff did not release or discharge said cows from said distraint and levy thereunder, at any time before this suit brought; and if the jury shall further find, that on or about 6th May, 1877, the said Benjamin Worthington fraudulently and clandestinely removed said cows from said premises, and brought them to Carroll County, whilst said cows so remained under said seizure and levy under said distraint, if the jury so find; and shall further find that the said bailiff, accompanied by said Benjamin I. Worthington and other persons, discovered said cows on the premises of the plaintiff, on the 28th May, 1877, or thereabout, and seized and took the same, and took and left the same at an inn kept by defendant, for safe-keeping, if the jury so find, and that the same were at said inn when the replevin in this cause issued, then the plaintiff cannot recover in this case, and the verdict of the jury must be for defendant.

14. That there is no legally sufficient evidence in the cause from which the jury can find that there was a bargain and sale from and by Benjamin Worthington to the plaintiff, of the cows in question in this case, on the 11th day of May, 1877.

15. That in the absence of legally sufficient evidence of a bargain and sale of the cows in question, by Benjamin

Worthington to the plaintiff, on the 11th day of May, 1877, the plaintiff cannot recover in this cause.

The Court (HAYDEN, J.,) granted the plaintiff's seventh and eleventh prayers, and rejected all the defendant's prayers. The defendant excepted; and the verdict being for the plaintiff and damages assessed at one cent, and judgment for one cent damages, and $132.66 cost of suit, the defendant appealed.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, MILLER, ALVEY, GRASON and ROBINSON, J.

*William P. Maulsby,* for the appellant.

The defendant's first prayer ought to have been granted. The second prayer ought to have been granted. It was based on the evidence in the cause. The law of it is unquestioned and unquestionable. The third prayer is, that if the plaintiff did not *bona fide* purchase the cows as and for his own property, the verdict must be for the defendant. The fourth, fifth and sixth go to the question as to what constituted a purchase: 1st. That to constitute a purchase, there must have been a payment of purchase money—a delivery under the contract of purchase. 2nd. That an agreement to sell and purchase, or a sale at an agreed price, did not pass title without some payment of purchase money, or a delivery—that payment of earnest money or delivery, are necessary to make a valid bargain and sale. That if the transaction was an agreement that plaintiff *would* give to owner a fixed price, but that if he, the owner, *could get more,* he should do so, *and sell them to anybody who would give him more,* it was not a valid bargain and sale.

The seventh prayer is, that a pledge as collateral security, if found by the jury, was not a bargain and sale. The plaintiff relied on title under a bargain and sale, and therefore the instruction asked by this prayer was proper

and pertinent. It was the right of the jury to understand all law that arose on proof offered.

The eighth prayer puts, with perhaps greater distinctness, some of the same propositions put previously. If the jury find that the transaction was an *agreement* that plaintiff *should purchase,* and that debts due by owner should go in part payment, and that balance of purchase money should be paid at no specified time, but whenever plaintiff could make the same; but that plaintiff did not then deliver up to alleged vendor, either or any of the notes alleged to be owing by him to plaintiff, or the judgment, or any receipt or evidence of payment; and if vendor did not deliver—if nothing in fact were done, except speaking words, *agreeing* to purchase—there was no bargain and sale.

The ninth is, that if the pretended vendor removed the cattle from Baltimore County, for the express purpose of evading a distress for rent, or a sale under a former distress, and if the plaintiff *combined* with him for said purpose, and if the plaintiff *pretended to purchase,* but *did not bona fide purchase* the cattle, it was a fraud; and tenth, that if the pretended bargain and sale set up by plaintiff was fraudulent, it was void. Each and every of these propositions had evidence to rest on, and each and every were incontinently slaughtered.

The eleventh, that if plaintiff aided in removing the cattle from his premises, the jury might find that he assented, and if he assented, he could not maintain this replevin, was rejected.

Somehow or other, hard to describe now, an idea was thrown into the cause during the trial, that plaintiff could recover as bailee. To meet this was the purpose of the twelfth prayer, that inasmuch as plaintiff had set up and relied on bargain and sale, he could not be bargainee and bailee both, or either, as was most convenient in the emergencies of his case.

Lamotte *vs.* Wisner.

The thirteenth prayer explains itself more fully than a brief, unless unduly extended, can explain it. If the pretended vendor was tenant of B. I. Worthington, and rent was due, and the cattle in question had been duly seized under a distress for rent; and if the sale under the distress was postponed as a kindness to tenant, at his request, and if the cattle were not released or discharged from said seizure, and if whilst so under seizure the tenant clandestinely removed them, and if afterwards Mr. Worthington and his bailiff, Mr. Stocksdale, discovered the cattle on the premises of the plaintiff, and seized them, and left them at the inn of defendant for safe-keeping, the seizure was made of right, under the lien existing under the former seizure under the distress, and the defendant was entitled to a verdict. It is submitted, that the law of this prayer is correct. *Smith's Land. and Ten., m. p.* 166; *Taylor's Land. and Ten., secs.* 537, 582, 610; 27 *Md.,* 660–666.

Whether or not the fourteenth prayer ought to have been granted, the fifteenth ought, if its language admit of the construction intended by its framer.

The verdict seems to have found only one of the facts in issue, to wit: property in the plaintiff, and not any taking by defendant, which is the foundation of the action. Finding will not sustain judgment. 7 *H. & J.,* 379; 1 *Chitty's Plead.,* 366; *Taylor's Land. and Ten., sec.* 759; 3 *Wendell,* 667; 3 *Chitty's Plead.,* 1042.

*J. A. C. Bond, W. A. McKellip* and *J. E. Smith,* for the appellee.

It is noticeable in none of defendant's pleas, does he claim property in himself, nor in any manner make pretence to title. The record shows without conflict at any point, in fact, it is indisputable, that at the time the cattle were taken under the writ, they were on the premises and in possession of defendant; that he had refused to deliver

them to plaintiff on demand made, and upon such refusal this writ went out. It will be appropriate to notice the defendant's first prayer in this connection, as defining his position in the case on the first plea. That prayer assumes that notwithstanding the plaintiff's property was placed on his premises, and taken into his possession and custody, yet, if it were there through no participation of his own in having it brought there, and he was inn-keeper, that then the plaintiff could not maintain his action. This prayer was properly rejected, because here the gist of the action of replevin is not the tortious taking. It is the proper action in all cases where a plaintiff has a right to the possession of personal property at the time the writ issues. *Cumberland C. & I. Co. vs. Tilghman*, 13 *Md.*, 74; *Smith vs. Williamson*, 1 *H. & J.*, 147; *Mason vs. Sumner*, 22 *Md.*, 312.

And next, what does the defendant propose to do under his second and third pleas? He proposes, (as a stranger, not as bailiff, &c., 2 *Chitty*, 631; 2 *Evans' Harris*, 104,) to acknowledge the taking, &c., in the name of a distress for rent, due or alleged to be due from the said Benjamin Worthington to Benjamin I. Worthington, &c. In short, he assumes that he could, under these pleas, make the same defences as allowed by Statute of *II Geo. 2, ch. 19, sec.* 22, and found in *Alexander's British Statutes*, 742, relating to avowry and cognizance in cases of this kind. Allow the property to have been regularly taken under a warrant of distraint, still the defendent could not justify such caption even as bailiff, under this mode of pleading. It would be incumbent on him to pursue the remedy given by Statute of *Geo. II*, above referred to, and such has been the unbroken and established course of practice in this State on the subject. *Evans' Practice*, 225 *and* 226; 2 *Evans' Harris*, 98, 99, 100, *and* 101–102; *Alexander's British Statutes*, 745; 2 *Saunders on Pleading and Evidence*, (*2nd Am. Ed.*,) 282.

" The action of replevin being thus of such general use to try the right to the possession of personal property, the defences to it generally go to disaffirm the plaintiff's title, and hence, except in cases of replevins of distresses for rent, the most common pleas with us are property in the defendant himself or a stranger, together with what is termed the general issue, *non cepit,* inconsistent though they may seem, (*Edelin vs. Thompson,* 2 *H. & J.,* 31,) and frequently all three." *Alexander's British Statutes,* 99.

That the defendant meant to give the same force to these pleas as if he had made cognizance, &c., under the statute, is evident from the frame of his thirteenth prayer, and it was properly refused; and it follows, we respectfully submit, that the inquiry touching the same, as affected by fraud, between plaintiff and Benjamin Worthington, of the cows, on the 11th day of May, 1877, when the sale was alleged to have been made, became an immaterial inquiry, and one not justified on the state of the case or pleadings. The Court did not err in its rulings on defendant's first exception. The appellant contends that he was entitled to show fraud in the sale to plaintiff. To what end? On whose rights could a fraud be practised in respect to the rights of any party to this suit? Certainly on no interest the defendant had, for he did not claim the property in himself, or make pretence of a right of possession to it. And in the course pursued by him, and the position of the pleadings, it was not competent (as we think we have before shown,) for him to set up fraud, &c., as affecting the interest of any one else; that is to say, he was not in a situation in this suit to protect any rights of the landlord of Benjamin Worthington, provided such landlord had any, in respect to the sale of the cattle in controversy, and not even if a fraud had been practised towards such landlord of the vendor of the cattle by the sale of them.

But an examination of the record will show that the landlord, Benjamin I. Worthington, was, with his alleged

bailiff, Stocksdale, pursuing the cattle in another county under no rights that he had acquired over them, or could possibly have acquired after reaching them. Before said cattle were removed, what had the landlord done to give him title to them? He had in January, 1877, given a warrant of distraint, directed to said Stocksdale, his bailiff, to distrain for the rent falling due December the 1st, 1876. When were the cattle, after their removal, followed? 28th May 1877. *Code, Art.* 53, *sec.* 18; *Alexander's British Statutes,* 567–8–9–70.

The defendant's third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, twelfth, fourteenth and fifteenth prayers relate to the *bona fides* of the sale to plaintiff, and as what constituted a sale in law, and were rightly rejected as having no application to the case.

His eleventh prayer puts it for the jury to find plaintiff's assent to the removal of the cows. In the first place there was no evidence to base such a prayer on; and in the second place all the evidence was against such an hypothesis. And besides the prayer was faulty in announcing a principle of law. Before the issuing of the writ of replevin in the case, plaintiff had gone to defendant and asked him to give the cattle up, and been refused by defendant. Even though the plaintiff had assented to the removal of the cattle at the time they were taken away, under the belief that his title to them was subordinate to the claim of another, made at the time to them, we cannot see how a mistaken view of his rights, then, could prejudice him at a trial of them. Whatever notions he might have had of his rights, could not influence the rulings of a Court, and had nothing to do with them.

The defendant's second prayer was very properly excluded, for the plain reason it would have been most unfair to have granted it, as the Court remarked, after the counsel had referred to this *very warrant,* as a distraint warrant, and as being void, and conferring no authority on the con-

stable in taking the cattle under it, and the case was con-
ducted throughout on that admission and announcement.

Is there any evidence in the record to show, or warrant
a jury in finding that the warrant mentioned in this prayer,
was other than a distraint warrant? The witness, Stocks-
dale, speaks of this warrant as "second distress papers."

The plaintiff's seventh prayer was granted, and cor-
rectly so. His eleventh prayer contains a true exposition
of the law applicable to actions of this kind.

ROBINSON, J., delivered the opinion of the Court.

This is an action of replevin brought by the appellee
to recover certain cattle found in the possession of the
defendant.

The defendant, now appellant, pleaded:

1st. *Non cepit.*

2nd. Property in George W. Stocksdale, as bailiff.

3rd. Property in Benjamin I. Worthington.

4th. That the plaintiff had no property in the cattle.

At the trial the plaintiff proved, that the cattle in ques-
tion formerly belonged to one Benjamin Worthington;
that in May, 1877, they were driven by him from his
farm in Baltimore County to the farm of the plaintiff in
Carroll County and there sold to him; that after said sale
they were taken from the possession of the plaintiff, and
put in the possession of the defendant.

The defendant, on the other hand, proved that on the
26th of January, 1877, the cattle were taken under a dis-
tress for rent due by the said Benjamin Worthington to
Benjamin I. Worthington, that they were left in the
possession of the tenant at his request, and upon the faith
of an agreement by him to pay the rent on or before the
first day of May following, and upon his failure to pay at
that time, the cattle were to be sold under the distress.
Evidence was also offered to show that the plaintiff was
not a *bona fide* purchaser without notice.

Lamotte *vs.* Wisner.

There can be no difficulty, we think, in regard to the well settled principles by which the several questions presented by the record are to be determined. At common law the landlord had no right to sell property taken under a distress, but was obliged to keep the same as a pledge until it was redeemed by the tenant. The power to sell was first conferred by Statute 2 *William & Mary,* and under its provisions, distress soon became a speedy and efficient remedy for the collection of rent. The statute provided that unless the tenant or owner replevied the property within five days after the distress and notice thereof, the person distraining was authorized to have the distress appraised, and after such appraisement to sell the same towards the satisfaction of the rent and expenses incident to the distress.

Now in this case the property was left in the possession of the tenant unsold at his request, and upon his agreement to pay the rent on or before a day named, and as between him and the landlord, it remained subject to the lien acquired under the distress. If, however, the landlord permitted the cattle to remain in the possession of Benjamin Worthington, the tenant, for an unreasonable length of time, without making a sale under the distress, namely, from the 26th of January to the first of May following, and they were then driven by the tenant from the farm occupied by him to the farm of the appellee, and were there purchased by him, without notice of the distress, we are of opinion that the landlord's lien cannot be enforced to the prejudice of the rights of the appellee as a *bona fide* purchaser.

On the other hand if the cattle were not sold to the appellee, but merely left in his possession by the tenant, they still remained subject to the lien acquired by the landlord under the distress. The main question, therefore, in this case, is, whether the appellee was a *bona fide* purchaser without notice.

There was no error however, in the refusal of the defendant's first and second prayers. Replevin may be maintained in this State, not only for the unlawful taking but also for the unlawful detention of property.

And although the cattle may have been taken from the possession of the appellee by a constable of Carroll County, or by other persons and delivered to the possession of the appellant, yet, if the latter refused to deliver them to one who was entitled to the immediate right of possession, an action of replevin would lie.

Nor was there any error in refusing his third prayer. It is not necessary in replevin that the plaintiff should prove an absolute title to the property. As against a trespasser or wrong-doer, the right of possession is sufficient.

The mutual assent of the seller and buyer is necessary of course to the validity of every sale. In this case, if the appellee agreed to give a certain stipulated sum and the tenant agreed to take it, or if the latter agreed to sell the cattle to the former in consideration of an existing indebtedness, the cattle being in the possession of the appellee, the title passed and no other delivery was necessary.

The defendant's fourth, fifth, seventh and eighth prayers, were, therefore, properly refused.

On the other hand, if the appellee only made a conditional offer which was not in fact accepted, then of course the sale was incomplete, and the defendant's sixth prayer ought to have been granted.

Nor do we see any objection to the ninth prayer. If the appellee had notice of the landlord's distress, or assisted the tenant in removing the property from the farm occupied by him, for the purpose of preventing the landlord from executing his distress, then he was not entitled to recover. As against the landlord he had neither title or the right of possession.

The tenth, twelfth and fifteenth prayers were properly refused for the reasons assigned in considering the third prayer.

The fact that the appellee assented or assisted in driving the cattle from his premises, under a mistake in regard to his rights would not prevent him from afterwards asserting his claim to the cattle, and there was no error in refusing the eleventh prayer.

The thirteenth prayer was erroneous, because it did not submit to the jury to find whether the appellee was a *bona fide* purchaser without notice. With this qualification it presents correctly the law governing and controlling the case.

The fourteenth prayer was of course properly rejected.

There was no error in excluding the evidence offered in the first bill of exceptions. The fact that other persons appraised the cattle at $249, for which the appellee paid $300, did not lead in any manner to prove that the sale was fraudulent.

It is argued in the brief of the appellee, that the appellant's thirteenth prayer was properly refused, because the defendant had no right to set up the distress of the landlord either by way of plea or in evidence.

Now in an action of replevin in this State, the plaintiff must show that he is entitled to the right of possession. The defendant may plead *non cepit,* property in himself, or in a stranger, inconsistent though these pleas may seem. *Edelin vs. Thompson,* 2 *H. & G.,* 31. The plaintiff's replication to these pleas must set up property in himself, and on this the issue is joined. *Cullum vs. Bevans,* 6 *H. & J.,* 469; *Warfield vs. Walter,* 11 *G. & J.,* 80. And where the defendant pleads property in a third person, the burden of proof is upon the plaintiff to show a superior title to that third person. *McKenzie vs. B. & O. R. R. Co.,* 28 *Md.,* 161. Upon these pleas of property the defendant if he succeeds, is entitled to a return of the property with-

out making avowry or cognizance, because they destroy the plaintiff's title. *Crosse vs. Bilson,* 6 *Modern,* 102; *Butcher vs. Porter,* 1 *Salkeld,* 94; *Alexander's British Statutes,* 99.

The defendant having set up title in Benjamin I. Worthington by his third plea, it was competent for him to sustain the plea, or in fact to meet the issue presented by the replication of the plaintiff, by proving how and in what manner Worthington acquired title to the property.

It follows from what we have said, that the Court erred in granting the plaintiff's seventh and eleventh prayers.

*Judgment reversed, and*
*new trial awarded.*

(Decided 18th June, 1879.)