UPHAM & GORDON *et al.*, Appellants, v. E. B. ALLEN *et al.*, Respondents.

Kansas City Court of Appeals, January 10, 1898.

Replevin: JOINT OWNERS: PARTIES. Where goods are taken from the possession of the common agent or trustee of three distinct mortgagees who holds them under the lien and according to the terms of the respective mortgages, all of said mortgagees or their trustee should join in replevying said goods and one or two of them can not maintain the action.

*Appeal from the Linn Circuit Court.*—HON. W. W. RUCKER, Judge.

AFFIRMED.

*Ellis, Reed, Cook & Ellis* for appellants.

(1) The rule as to plaintiffs' right of recovery is stated too broadly and applied too severely. "In order to maintain the action of replevin the plaintiff must show the right of exclusive possession in himself as against the defendant in the action." 20 Am. and Eng. Ency of Law, p. 1050. This last statement of the rule is recognized as the correct one in the adjudicated cases. *Burns v. Lidwell*, 6 Mo. App. 192; *Pollock v. Douglas*, 56 Mo. App. 492; *Gardner, Adm., v. Morrison*, 12 Ala. 547; *Sprague v. Clark*, 41 Vt. 6; *Sperry v. Ethridge*, 70 Iowa, 27; *Craig v. Mason*, 64 Mo. App. 342; *Goldsmith v. Willson*, 67 Iowa, 662; *Adlard v.*

*Rodgers*, 38 Pac. Rep. (105 Cal.) 889; *Adams v. Hessian* (App. Ct. of Ind. 1895), 39 N. E. Rep. 530; *Newman v. Tymeson*, 13 Wis. 194; *Hazard v. Hall*, 5 Mo. App. 584; *Rankine v. Greer*, 38 Kan. 343; *Johnson v. Carnley*, 10 N. Y. (6 Selden) 570; *Harlan v. Harlan*, 53 Am. Dec. (Pa.) 612; *Croker v. Mann*, 3 Mo. 472; *Bank v. Woods*, 124 Mo. 72; *Adams v. Wildes*, 107 Mass. 123; *Jones v. Kellogg*, 51 Kan. 263; *Duncan v. Speer*, 11 Wend. 54; *Tabor v. Lawrence*, 134 Mass. 94; *Hoslen v. Lockwood*, 37 Conn. 500; *Edwards v. Frank*, 40 Mich. 616; *Van Nomee v. Bradley*, 69 Ill. 300; *McGill v. Howard*, 61 Miss. 411; *Krewson v. Purdom*, 16 Pac. Rep. (Ore.) 480; *Harker v. Dement*, 9 Gill (Md.), 7.

*Benj. L. White* and *H. K. & H. J. West* for respondents.

(1) On plaintiffs' own showing as to the right of possession, and waiving all questions of fraud, plaintiffs are not entitled to recover. To recover in replevin, plaintiffs must be entitled to the immediate and exclusive possession of the property sued for. *Deyerle & Porter v. Hunt & Hunt*, 50 Mo. App. 541, 546; *Spooner v. Ross*, 24 Mo. App. 599; *Lisenby v. Phelps*, 71 Mo. 522; *Cross v. Hulett*, 53 Mo. 397; *Gossett v. Drydale*, 48 Mo. 430.

SMITH, P. J.—This is an action which was brought to recover the possession of certain specific personal property consisting of a stock of merchandise. There was a trial by the court without the intervention of a jury, which resulted in a finding and judgment for the defendants, to reverse which judgment plaintiffs have appealed.

At the very threshold of the controversy here the defendants insist that if every error which the plaintiffs have assigned was sustained, that yet the judgment will have to be affirmed because it is disclosed by the evidence presented by the record that the plaintiff was not, at the time of the commencement of the suit, entitled to the immediate and exclusive possession of the property described in their petition, and that therefore it is for the right party. This insistance must be determined in the light of the evidence and the rules and principles of law applicable thereto.

STATEMENT.

It is conceded that one Wren simultaneously executed two mortgages covering his entire stock of goods, the one to the Swofford Brothers to secure about $7,000, and the other to the plaintiffs to secure the sum of about $2,900. The latter recited that it was subject to the priority of the former. The recitals of the two mortgages were identical except as to the names of the mortgagees and the amount of their respective debts. There was a provision in the mortgages authorizing the mortgagees or their agent before the maturity of the mortgage debts to sell the mortgaged goods for cash in the usual course of retail trade and to apply the proceeds, less the necessary expenses, to the payment of said indebtedness. It was further therein provided that any custody or control of the mortgagor over the mortgaged property should be as agent of the mortgagees to make sale, etc. It was also further provided that on default in the payment of the mortgage indebtedness, or in case of attachment or judgment against the mortgagor, or if it appeared impracticable to continue the sale, as specified in the mortgage, or if the mortgagees should deem themselves insecure, that the latter should have power to terminate any agency of the former and forthwith proceed to sell the mort-

gaged property at public or private sale, as they should think fit, whether said indebtedness was by its terms due or not.

It further appears that the said Wren, at the time of the execution of the two mortgages already referred to, also executed a third to secure his further indebtedness to the Blaslands-Parcels-Jordon Shoe Company and others. This mortgage is not found in the record, but it may be fairly inferred from the evidence in respect thereto that it contained provisions similar to those of the other two. These three mortgages, so far as they relate to the issues in this suit, may be read as one, and in which the priorities of the several classes of mortgagees are provided for in the order in which we have referred to said mortgages.

Immediately after the execution of the three mortgages the Swofford Brothers, the mortgagees entitled to priority, authorized Reynolds, a former clerk of the mortgagor, to assume charge of the mortgaged property and to proceed to sell the same in the usual course of the retail trade. It appears that the business was for several months thereafter conducted in the name of Reynolds, the money received from the sale of goods was deposited in bank in his name, and remittances to the Swofford Brothers were likewise made in his name. It also further appears that the mortgagor continued in the store and participated in the management of the business of the same. For some reason which is not made clearly to appear, Reynolds, after several months' service in the store, retired therefrom.

About the twentieth of September, 1895, Wren, the mortgagor, made a general assignment of all his property to Early, who took possession of the mortgaged stock of goods, under such assignment. On the twenty-third day of said last named month, the said Early, at the instance of the mortgagor and all of the

mortgagees named in the first, second and third mortgages, released and surrendered to the mortgagor his possession to said stock of goods taken under said assignment, and thereupon the said mortgagor executed and delivered to E. C. Ellis a written instrument which recited: "For value received, I hereby redeliver and surrender to E. C. Ellis, and to him for the Swofford Brothers" and the other mortgagees named in the said second and third mortgages the said stock of goods described in said three mortgages and to "be held under the lien thereof according to the terms and order of priority therein described." The said Ellis thereupon turned over the possession of the store to one Fox, who was an employee of the Swofford Brothers. The store was from that time until its seizure by the defendants under their writs of attachment run in the name of Fox, who seems to have occupied about the same relation to the business of the store and the mortgagees as did his predecessor Reynolds.

It is disclosed by the evidence that the plaintiffs, the mortgagees named in the second mortgage, with the consent of the Swofford Brothers, prior mortgagees, had, under the provisions of said second mortgage, advertised said property for sale on the day following that on which it was seized by defendants under the writs. It is in effect conceded that at the time of the commencement of this action the mortgage debt by the Swofford Brothers had not been discharged.

The rule is elemental that in an action of replevin or its statutory substitute, an action for the recovery of the possession of specific personal property, where the issue raises, as here, the question of title, it devolves on the plaintiff to prove that at the time of the caption he had a general or special property in the goods taken and the right to the immediate and exclusive possession.

REPLEVIN: joint owners: parties.

2 Greenl. Ev., sec. 561; Cobbey on Replevin, sec. 423; *Gray v. Parker*, 38 Mo. 160; *Mathias v. Sellers*, 86 Pa. St. 486; *Lanotte v. Wisner*, 51 Md. 543. A part owner of a chattel can not maintain replevin against his co-owner (*Cross v. Hulett*, 53 Mo. 397), nor can a joint owner thereof maintain that action against a stranger in possession without joining his co-owners. Cobbey on Replevin, sec. 425; *Spooner v. Ross*, 24 Mo. App. 599; *Mamerick v. Castleman*, 23 Mo. App. 481. And so where two parties are joint owners of personal property they should be united as parties plaintiff in an action to recover possession. Cobbey on Replevin, sec. 430; *Seip v. Tilghman*, 23 Kan. 289. In *Deyerle v. Hunt*, 50 Mo. App. *loc. cit.* 546, it was said that in an action for the recovery of specific personal property the plaintiff must state in his petition the extent of his interest in the property, such allegation being a material one. And in the same connection it was further stated on the authority of Lindley on Partnership, section 277, that where property belonging to a firm is taken by a third person from the manual possession of one of the partners, all the partners must bring replevin to recover it. So it has been ruled that if a right of action is alleged to be in one, there is a fatal variance when the proof shows it to be in two or more. *Spooner v. Ross, supra; Thieman v. Goodnight*, 17 Mo. App. 429. This rests on the logic of the rule that the title or right of action alleged is constitutive and must be proved. *Pier v. Heinrichoffen*, 52 Mo. 333; *Bruce v. Pullis*, 34 Mo. 246; *Seibert v. Allen*, 61 Mo. 482.

Now, if the evidence in the present case shows that the plaintiffs were not entitled to the immediate and exclusive possession of the property in controversy, then the defendants' insistance must be sustained.

Turning again to the suppletory agreement of

September 23, 1895, by which it appears that Early surrendered the possession to Wren and the latter "redelivered and surrendered such possession to Ellis for the mortgagees named in all three of said mortgages," then it is plain that the mortgagees in the first and third mortgages were thereby placed in the joint or common possession of said mortgaged property with those named in the first. Ellis was no more than an agent for all the mortgagees. He turned over the possession to Fox with the acquiescence of the mortgagees. The latter was but an agent who had been designated under the provisions of the mortgagees to take charge of the store and dispose of the stock of goods therein contained in the usual course of the retail trade. He was but the successor of Reynolds. His possession was that of all the mortgagees. While all the mortgagees were in possession the proceeds arising from the sale of the goods were to be applied in the order of priority already stated. If the defendants invaded the possession of Fox they thereby invaded that of all of the mortgagees, for his possession was not alone that of the plaintiffs, but that of the first and second mortgages as well.

The mere fact that the plaintiffs were taking steps to sell out the mortgaged goods with the consent of the mortgagees named in the first mortgage, did not have the effect to give them the exclusive right to the possession. It is not pretended that the mortgagees in the first and third mortgages have, since the caption, assigned said mortgage debts to the plaintiffs (Cobbey on Replevin, sec. 429, and authorities there cited), nor that they had surrendered or in any way parted with the common possession held by them through Fox at the time of the caption.

If it was intended by the mortgagor and mortgagees to weld said suppletory agreement onto the

several mortgages, and to thereby convert them into deeds of trust to the extent of investing Ellis with the legal title and possession of the goods to be held and disposed of by him in accordance with the original provisions of the said mortgages, then the possession of Fox was that of Ellis, and it was the latter's right of possession that was invaded, and consequently it was he who was entitled to the immediate and exclusive possession. If Ellis was a trustee, the right of action for the recovery of the goods was solely in him. If, on the other hand, he was a mere agent for the mortgagees, and while in possession of the mortgaged goods, he, with the consent or acquiescence of said mortgagees, turned over such possession to Fox, then the possession at the time of the caption was in all of the mortgagees, and the plaintiffs did not have the exclusive right to the possession. And whether Ellis regained the possession under the suppletory agreement for all of the mortgagees named either in his quality as trustee or mere agent for them, the inevitable result would be the same in either case. That is to say, that the plaintiffs were not entitled to the immediate and exclusive possession.

Entertaining this view of the case, it becomes wholly unnecessary for us to notice the several errors which the plaintiffs have assigned as grounds for the reversal of the judgment.

The judgment must accordingly be affirmed. All concur.