JAMES W. ANDERSON, use of CHRISTIAN SMITH ET AL. *vs.* JOHN H. STEWART.

*Appeal—Replevin by one Partner for Firm's Property—Waiver of Objection of Lack of Party Plaintiff—Description of Property in Action of Replevin—Instruction as to Sufficiency of Evidence.*

After the entry of a suit by a plaintiff to the use of third parties, an appeal from a judgment for the defendant was taken by an order signed by W. and W. "attorneys for *plaintiff.*" *Held*, that the use of the word "plaintiff" in this order instead of the plural "plaintiffs," is an immaterial clerical misprision, and that the appeal should be treated as having been taken for all the parties plaintiff both legal and equitable.

No appeal lies from the action of the trial Court in allowing or disallowing the pleadings in the suit to be amended.

The plaintiff in replevin need not have an absolute title to the property but may maintain the action if he has the right of possession at the time of issuing the writ. Consequently, one partner may sue in replevin for property belonging to his firm when he is entitled to its possession.

The plaintiff A. purchased certain goods in his own name and afterwards directed the brokers who effected the sale to make the contract for the same and the shipment in the name of his firm, A. & Co. In an action of replevin for said goods instituted by A. alone, the defendant objected to the admission in evidence of the contract, which represented the sale as having been made to A. & Co., because of the variance as to parties between the contract and the declaration, and this objection was sustained. The trial Court refused to allow the declaration to be amended by inserting the name of A's partner as an additional plaintiff, and instructed the jury that the verdict must be for the defendant since the plaintiff had offered no evidence legally sufficient to entitle him to recover. *Held*, that the plaintiff, who purchased the goods for his firm, was entitled to possession as against the defendant and could maintain replevin, and that it was error to reject the contract of sale offered in evidence.

*Held*, further, that even if the action should have been brought in the names of all of the partners instead of that of one partner alone, the objection should have been made by a plea in abatement, and was waived by pleading over to the merits.

When the evidence offered by a plaintiff was legally sufficient to entitle him to recover but it was ruled to be inadmissible by the trial Court, the jury should not be instructed to find for the defendant on the ground that the plaintiff had offered no evidence legally sufficient for a recovery, but the instruction should refer to the legal sufficiency of the evidence actually in the case.

In an action of replevin, although the description of the property in the writ and declaration may be indefinite, yet, if the property has been delivered to the plaintiff by the sheriff, the burden is upon the defendant to show that the property actually replevied was not that which the plaintiff designed should be taken.

*Decided June 25th, 1908.*

Appeal from the Circuit Court for Harford County (DUN-CAN, J.)

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*Fred. R. Williams* (with whom were *Stevenson A. Williams* and *Philip H. Close* on the brief), for the appellants.

*John S. Young* and *Harry S. Carver*, for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an action of replevin instituted by James W. Anderson against John H. Stewart to obtain possession of "fifteen hundred cases of three pound cans, together with their contents, cases and labels," which the *nar* charges the defendant took and unjustly detained in Harford County. Subsequent to the bringing of the suit, and before plea filed, the suit was duly entered to the use of Christian Smith, Willard G. Rouse and R. Harry Webster, copartners, trading as Smith, Rouse and Webster. The single plea filed was that the defendant "did not take the goods and chattels mentioned in the schedule."

James W. Anderson was a resident of St. Louis, Mo., and the equitable plaintiffs and the defendant were all residents of Harford County, Md. A replevin bond in the penalty of $4,000 was given before the writ issued, by Christian Smith, Willard G. Rouse, R. Harry Webster and John G. Rouse for and in behalf of the said James W. Anderson, with condition as required by law.

At the trial of the case, R. Harry Webster testified that he was a member of the firm of Smith, Rouse and Webster, canned goods brokers in Harford County, Md., during the year 1904, the other two members being Christian Smith and Willard G. Rouse, and that his firm during 1903 and 1904 were factors for the defendant, John H. Stewart, under written contracts for each year, both of which were similar, and were produced by the witness, and identified, and the execution thereof proven by him, the contract for 1904, being as follows:

Contract for     No. 405
Advances and Commission Sales
Between
John H. Stewart, Packer
and
Smith, Rouse and Webster, Factors.

Bel Air, Md., March 31, 1904.

Advanced to John H. Stewart, Rocks, Md., hereinafter called Packer, by Smith, Rouse & Webster, Commission Merchants, Bel Air, Md., acting as factors for packer in his or their business of packing fruits and vegetables, the follow-

ing supplies and materials to be charged at the prices and delivered upon the terms herein mentioned.

750 No. 2 cases at 9 cts. each.
3,000 No. 3 cases at 11 cts. each.
18,000 No. 2 Tomato cans at $1.50 per hundred.
72,000 No. 3 Tomato cans at $1.95 per hundred.
Sufficient lbs. solder at 14½ cts. per lb.
Sufficient labels at .90 per thousand No. 3's.
Seed: Sufficient tomato at 1.25.

Packer's option of increasing or decreasing the above amount to the quantity needed by him at his factory during the season of 1904.

Delivery: F. O. B. Baltimore, Md.

Shipment to be made as follows, subject nevertheless, to any strike, fire or other unavoidable casualty which may interfere with our obtaining shipment from manufacturers:

Last half of May.

Terms.—Packer agrees to give promissory note payable Nov. 25, '04, with interest from May 1, '04, for amount of materials hereunder and to place with us for sale his or their entire pack of canned goods and to allow us five per cent. (5 per cent.) commission for selling the same. We to guarantee the payment of all goods sold by us, provided same are approved and accepted by purchasers, and to bill all goods sold, collect the proceeds and apply same to any indebtedness to us until same is paid in full, and to pay balance to packer promptly as soon as returns are received.

And it is hereby understood and agreed that the cans and other materials herein mentioned, or such cans or other materials, supplies, fertilizers or cash as may be at any time hereafter delivered to packer by us, are advanced by us, as factors, to the packer to enable packer to engage in the packing business, and such advances, as well as any cash which we may from time to time advance packer for the purpose of his or their business, are made only because of our relation to the packer as factors and on account of our rights growing out of this relationship to a lien upon the materials advanced as well as the manufactured product, and it is therefore understood and agreed that the indebtedness to us for any advances made either hereunder, heretofore or hereafter, shall constitute a lien upon packer's pack of canned goods and the proceeds of the sale thereof, whether collected by us, or in process of collection, and also upon any materials or canned goods that packer may have left over after the packing season, and as an incident to such

relationship, it is understood that *we are entitled to full title to* and *possession of the manufactured product at any time we may demand.* And as a condition to and as a part of the consideration of the contract between us, it is agreed that in the event of the death of the packer or packer's failure to meet his or their obligations to us as they mature or packer petitioning or being petitioned against in bankruptcy or insolvency, or in the event of any assignment by packer for the benefit of packer's creditors, or any writ of execution, levy or attachment being issued against packer, packer directs us to take and ship said goods, either for sale or storage, and when sold to apply the proceeds of the sale of them as hereinbefore mentioned, and packer hereby authorizes any one in possession of said goods to deliver them to us upon our request, it being the intention of this agreement that in any of the aforesaid events we shall have the exclusive right to the possession of all of said goods.

The above memoradum of advances with the terms and agreement thereunder is accepted and agreed to by each of us.

John H. Stewart, Packer.

Smith, Rouse & Webster, Factors.

That during the canning season of 1904, the defendant, John H. Stewart, was largely indebted to the said firm for advances and said firm sold fifteen hundred cases of No. 3 canned tomatoes for the defendant to the plaintiff on two separate occasions, five hundred (500) cases at one time and one thousand (1,000) cases at another; that the contract for said sales was made in triplicate, one copy of which went to the plaintiff, one to the defendant and the other was kept by said firm as brokers, and the defendant returned to witness' firm his warehouse receipt for said goods to J. M. Anderson & Co.; that the plaintiff was well known personally to the witness' firm and was himself in Harford County in June, 1904, looking after the purchase of canned tomatoes, that said purchase was made on plaintiff's own account but when the contract was drawn plaintiff directed to have it made in the name of J. M. Anderson & Co., the plaintiff's firm, which he used for his convenience in shipping and handling said goods; that said contracts were fac simile of each other, all made by the same impression, and were separated by being torn apart on perfor-

ated lines; and that said contracts or sales tickets were duly signed by said Smith, Rouse & Webster, brokers, but that the copies of said contracts or sales tickets hereinafter set forth are fac similes of said contracts or sales tickets except that such signatures are omitted; witness could not say that the defendant was informed with reference to said sale other than by the delivery to him of a copy of the contract nor can he say that defendant knew that the purchase had been made by the plaintiff for his own account or that the defendant knew that the plaintiff was a member of said firm.    The plaintiff's firm beside himself consisted of James M. Anderson and Louie A. Anderson, the former of whom has died since this suit was brought, leaving the plaintiff and said Louie his surviving partners.

The plaintiff then offered to read in evidence the copy of the said contracts or sales tickets in the possession of witness' firm, which is as follows:

Rating                    No. 3146
Bel Air, Md., Sept. 2, 1904.
Sold to J. M. Anderson & Co., St. Louis, Mo.
For account of John H. Stewart.

500 cases No. 3 standard tomatoes, Stewart brand at 70c. per doz.   Terms, cash less 1½% in ten days from date of invoice which is to be dated Sept. 20.

Delivered f. o. b. Rocks, Md., M. & P. R. R.

To be shipped during the month of October, 1904.

Swells guaranteed for six months from date of invoice; all other claims must be reported in 30 days from date of invoice.

Accepted          .......................... ....Brokers.

Rating                    No. 3181
Bel Air, Md., Sept. 14, 1904.
Sold to J. M. Anderson & Co., St. Louis, Mo.
For account of John H. Stewart.

1000 cases No. 3 standard tomatoes, Stewart brand, at 70c. per doz.   Terms, cash less 1½% in ten days from date of invoice which is to be rendered Oct. 5th.

Delivered f. o. b. Rocks, Md., M. & P. R. R.

To be shipped when requested before Jan. 1, 1905.
July 1, 1905.

Swells guaranted for six months from date of invoice; all

other claims must be reported in 30 days from date of invoice.
Goods to be held free of storage until Jan. 1, 1905.   Buyers
to pay insurance after Oct. 15, 1904.

. . . . . . . . . . . .  . . . . . . . . .'. . . . . Brokers.

The defendant objected to this offer *because of an alleged.
variance between said contract and the declaration, in respect of
parties*, and the Court sustained the objection and declined to
permit the contract to be given in evidence, and the first
exception was taken to this ruling.

The plaintiff thereupon asked leave to amend the writ and
declaration by introducing Louie A. Anderson as an addi-
tional plaintiff, and describing him and the plaintiff, as surviv-
ing James M. Anderson, formerly partners, trading as J. M.
Anderson & Co., to which amendment the defendant objected,
and the Court sustained the objection and refused to allow
the amendment, to which ruling the second exception was
taken.

The plaintiff then stated to the Court, that though he had other
evidence, it would all be affected by the Court's ruling, and
it was therefore not offered.

The defendant then asked an instruction that the plaintiff
had offered no evidence legally sufficient to entitle the plaintiff
to recover and their verdict must be in favor of defendant for
the return of the property replevied, one cent damages and
costs, which instruction the Court gave, and the plaintiff ex-
cepted to that ruling, which constitutes the third exception.
Verdict was rendered accordingly, and judgment entered on
the verdict, and an appeal was ordered in the following words:

"Mr. Forwood, Clerk: Please enter an appeal in the above entitled
case to the Court of Appeals of Maryland.

F. R. Williams,
S. A. Williams,
Attorneys for *Plaintiff*.

There was a motion to dismiss the appeal for the reason
that it was taken, as alleged by the appellee, by the plaintiff,
James W. Anderson, who at the time the appeal was taken
had no interest in the result of the suit as it had been, some-
time before the trial, entered to the use of Smith, Rouse and

Webster. This contention is based upon the fact that in signing the order for appeal, the Messrs. Williams signed as attorneys for the *plaintiff* (singular) instead of for the *plaintiffs* (plural), and the appellees draw from this the arbitrary conclusion that the purpose was to appeal for Anderson only, and not for the equitable plaintiffs, and in support of this motion we are referred to *Patterson* v. *Gelston*, 23 Md. 446, and *Trayhern* v. *Nat. Mech. Bank*, 57 Md. 596.

In the former case it was held, as we think correctly, "that every appellant must appear to be aggrieved by the judgment complained of, in order to be heard on his appeal; and, ordinarily, no one can properly be said to be aggrieved by a judgment unless it be rendered upon a matter in which he has some interest or right of property." That was an appeal from a decision of the Commissioner of the Land Office and it was held that this rule was not applicable to cases arising on applications for patents.

In the latter case, the appeal was from an order ratifying an auditor's account. Before the order of ratification, the appellant, Mrs. Trayhern, had entered all her interest in the cause to the use of her solicitor, but it appeared that this was done to secure his fee in the matter, and this was held sufficient to show that Mrs. Trayhern had an equitable interest which justified her appeal. Here, the bond was given by the equitable plaintiffs in behalf of the legal plaintiff, James W. Anderson, and this is sufficient to create a presumption that the entry to their use was to protect them in that matter, and that Anderson still retained an interest that justified an appeal *by him*. This is upon the theory that the appeal was designed to be taken by him only.

But we are of opinion that this appeal should be treated as taken for all the parties plaintiffs both legal and equitable.

In *Newcomer and Wife* v. *Kean*, 57 Md. 121, there was a judgment in an action for slander of Newcomer's wife. The declaration concluded to the damage of the *plaintiff* (singular). The verdict was for the plaintiffs, and the defendant moved in arrest of judgment on the ground that the damages must be

claimed for both plaintiffs, they being husband and wife, and the lower Court so held, and arrested the judgment.　On appeal, this Court, while agreeing with the view of the lower Court as to the law, held that the word "*plaintiff*," instead of "plaintiffs," was a "mere clerical misprision in the pleader, the omission of a letter *s*.　That the case was tried on its merits before a jury and every legal intendment ought to be made in support of the verdict."　We think that the reason of that decision is applicable to the present case, and that the motion to dismiss should not prevail.

The first and second exceptions here, go to the vital points in the case for if there was error in the first exception, there was necessarily error in withdrawing the case from the jury.

The first exception raises two questions; (a) was there a fatal variance, and (b), if so, was it waived by pleading in bar.

(a.) The testimony of Mr. Webster is explicit that the purchase of 1,500 cases of canned tomatoes was made by James W. Anderson in person and for his individual account, and that when the contract was drawn he directed it to be made in the name of J. M. Anderson & Co., explaining that he used the firm name for convenience in shipping and handling the goods.　He was therefore, as to Stewart, an undisclosed principal.　It is too well settled to be disputed, that where a contract, not under seal, is made with an agent in his own name for an undisclosed principal, either the agent or his principal may sue upon it, the only limitation upon this doctrine being, that if the principal sues upon a contract thus made with an agent in the name of the latter, the defendant is entitled to be placed in the same position at the time of the disclosure of the principal, as if the agent had been the real contracting party.　*Oelrichs & Lurman* v. *Ford*, 21 Md. 507; *Balt. Coal Tar Co.* v. *Fletcher and Murdock*, 61 Md. 295; *Ford* v. *Williams*, 21 How. (U. S.) 287.　In such case the agency may be proved by parol evidence.　*Higdon* v. *Thomas*, 1 H. & G. 139.　But if there was no evidence to show that James W. Anderson was the real contracting party, we do not think there would be a fatal variance.

In most jurisdictions, and certainly in Maryland, it is not necessary that a plaintiff in replevin should show absolute title to the property. *Lamotte* v. *Wisner*, 51 Md. 543. In this State the issue is the right of possession at the time of the issuing of the writ, and not the absolute title to the property for all time. *Cumberland Coal and Iron Co.* v. *Tilghman*, 13 Md. 83.

"Under particular circumstances, in some cases, a single partner may sue in replevin in his own name, especially where he is entitled to possession himself." 18 *Enc. Pl. & Pr.*, 508–9. Where averment of ownership is supported by proof of an interest from which ownership of some kind can be inferred, there is no fatal variance. 22 *Enc. Pl. & Pr.*, 604; *Cook* v. *Champlain Trans. Co.*, 1 Denio. 99.

The possession of one partner is the possession of all; and it is this principle which forbids that one partner or tenant in common, should maintain replevin against another. Where a single partner recovers in replevin firm property *from a third person*, his recovery is in right of the firm, and is the recovery of the firm. His possession before the wrongful taking was the possession of the firm, and his possession, after recovery and delivery of the property, is still the possession of the firm. The title is never put in issue at any time and is in no manner affected in such case.

A case in point is *Bostick* v. *Brittain*, 25 Ark. 482, successfully argued on appeal by the late Attorney-General Garland. The action was replevin by Bostick individually against Brittain for 16 bales of cotton. Bostick was a member of the firm of Bostick & Pennewit. The trial Court instructed the jury that plaintiff must prove he was entitled to possession as *his individual property;* also that if they believed from the evidence that the cotton was the property of Bostick & Pennewit, and not the individual property of Bostick, they must find for defendant. This was held error, the Court saying, "If it be true that the firm had the general property in the cotton, yet Bostick's interest and right of possession, as clearly shown by the evidence of May and Neal, entitled him to maintain replevin under our statute."

In *Smith* v. *Wood*, 31 Md. 293, replevin was brought by the appellee in his own right. The judgment was reversed in this Court for error not necessary to advert to in this case, but the Court on pages 298 and 299, distinguishing between actions in tort, and actions in contract, said: "The first prayer of defendant, in the 23rd exception, presents the question, whether the plaintiff can recover in this action, property to the possession of which he may be entitled, as surviving partner, without having declared as such. The only authority referred to by the appellant's counsel on this point, 1 *Chitty's Pleading*, 19, is in reference to actions on contract. In actions of that sort it is necessary to declare as surviving partner. The reason of the rule, is, as argued by the counsel for the appellee "a supposed variance between the contract proved, and the contract laid." 1 *Saunder's Rep.*, 6 ed., 291, i. This rule does not apply to the present action. It is not founded upon contract, but is an action of tort. The question here involved is the right of possession. The proof of the right of possession is sufficient to enable the plaintiff to recover under the allegation in his declaration, and the *quo modo* of that right cannot be held to be a variance. We therefore think the prayer was properly rejected." The case of *Gilbert* v. *Wright*, 51 Md. 150, cited by the appellee here, was a case in contract, and therefore is not in conflict with *Smith* v. *Wood*.

Upon these authorities we think there was no variance, and there was therefore error is rejecting the sales tickets offered in evidence.

It will be observed that the only objection to them was the alleged variance *in respect of parties*. Something was said in the appellee's brief about the copies offered not being signed by the brokers so as to bind both parties. This objection not being made below, could not be made here. But it is clear from the evidence that the contract of purchase was executed in triplicate, and that each original was signed by the brokers, one being given to each party, and one being retained by the brokers, and that the paper offered in evidence was a fac simile of all three except that the signature was

omitted. This objection therefore, if made below, would not have availed.

(*b*) But even if there were held to be a variance in this case, it would upon the authority of *Brown* v. *Ravenscroft*, 88 Md. 216, be waived by failing to plead in abatement, and pleading over to the merits. In that case we adopted the reasoning and results of the decision in *Wright* v. *Bennett*, 3 Barb. 451, where it was said, "The plaintiff, as one of the joint owners of the property, is entitled to the possession as against a stranger, *in which position the defendant stands, as he does not connect himself with the title of the other owners, who have been omitted* as plaintiffs, and there is great propriety in holding him to his plea in abatement, if he desires to avail himself of that omission, and the bare fact that the plaintiff with others, and not alone, owns the property, is no bar, either under the plea of *non detinet.* or when specially pleaded, though it would be proper matter for plea in abatement."

As to the second exception, we are of opinion that the proposed amendment would have introduced entire new parties, as it would have substituted surviving partners, for an individual and the ruling was therefore correct. But apart from this, the amendment of a pleading in an action at law is a matter within the descretion of the trial Judge, from whose action in this respect no appeal will lie. *Hearn* v. *Quillen*, 94 Md. 39.

As to the third exception. Having held that the evidence offered under the first exception should have been admitted, it follows that the defendant's prayer, *in the form offered*, was erroneously granted. Under the ruling on the first exception, there was no evidence *actually in*, legally sufficient to entitle the plaintiff to recover, and if so framed, the prayer would have been technically correct, under the previous rulings. But the prayer went further, and asserted that no such evidence had been *offered*.

At the oral argument, the appellee contended that the description of the property in the writ, bond and declaration, was too indefinite. It is not perceived how that question arises here. The writ is not set out in the record, but if that was

defective, the proper procedure would seem to have been a motion to quash the writ; if the defect was in the declaration, the objection should have been made by demurrer. The general rule is that a description which can be made definite is good. *Cobbey on Replevin*, sec. 547.

"Although the description is indefinite, if the property can be pointed out it is sufficient. It need not be so definite that the Sheriff can find the property without aid." *Ibid*, sec. 547; *Warner* v. *Anghenbaugh*, 15 S. & R. 11; *Lea* v. *Terry*, 15 La. An. 159.

In the present case the Sheriff's return, "Replevied and delivered to plaintiff," raises at least a presumption that he was able to locate and identify the property described in the writ, and the burden is upon the defendant to show that the property replevied is not the same which the plaintiff intended should be replevied.

The question of the effect of the proposed amendment, upon the bond, it is not necessary to consider, as we have said the refusal to allow the amendment, is not the subject of review. If it were, the case of *Jamison* v. *Capron*, 95 Pa. St. 19, would be found interesting and instructive upon that question.

For the reasons stated the judgment will be reversed and a new trial will be awarded.

> *Judgment reversed with costs to the appellant above and below and new trial awarded.*